**v.**

**STATE of Alaska, Appellee.**

**No. S–169.**

Supreme Court of Alaska.

May 10, 1985.

John T. Maltas, Asst. Public Defender, Kenai, Dana Fabe, Public Defender, Anchorage, for appellant.

Dianne Olsen, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Philip N. Nash, Kenai, Guardian Ad Litem.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

V.M.W., the thirteen-year old daughter of D.A.W., was adjudicated a child in need of aid, pursuant to AS 47.10.010(a)(2)(A), (D) and (F).[1] This adjudication was based on D.A.W.'s admitted alcohol abuse which resulted in neglect of V.M.W., who is retarded and unable to meet her own needs. The record further shows that D.A.W.'s failure to supervise V.M.W. created conditions under which V.M.W. was sexually abused.

After a five-day disposition hearing, the superior court ordered V.M.W. committed to the care of the Department of Health and Social Services (DHSS)

> for placement in an appropriate setting, which may not be the parental home, for a period of time not to exceed two years or in any event past the date the minor becomes nineteen years of age.

The superior court's order further provided that:

> As a condition of placement in the home of her mother, D.A.W. must complete a residential substance abuse program ... and maintain sobriety until the time set for review as provided herein.

V.M.W. is an Indian child within the meaning of the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 ("the Act").

1. Alaska Statute 47.10.010(a)(2)(A), (D) and (F) provides in pertinent part:

   *Jurisdiction.* (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the court finds the minor

   . . . . .

   (2) to be a child in need of aid as a result of
   (A) the child being habitually absent from home or refusing to accept available care, or having no parent, guardian, custodian or relative caring or willing to provide care...;

   (D) the child having been sexually abused either by the child's parent, guardian or custodian, or as a result of conditions created by the child's parent, guardian or custodian, or by the failure of the parent, guardian or custodian adequately to supervise the child;

   . . . . .

   (F) the child having suffered substantial physical abuse or neglect as a result of conditions created by the child's parent, guardian or custodian.

Therefore, the requirements of the Act applied to the disposition hearing.

At the disposition hearing DHSS presented several witnesses in support of its recommendation that V.M.W. be placed in DHSS's care. All testified that continued custody of V.M.W. by D.A.W. was likely to result in serious harm to V.M.W.

There are two issues on appeal. First, D.A.W. argues that at least two expert witnesses are required to testify pursuant to the Act, 25 U.S.C. § 1912(e), and that of the state's witnesses only one qualified as an expert under the Act. Second, D.A.W. argues that the court erred in ordering D.A.W. to complete a residential alcohol abuse program and to maintain sobriety as a pre-condition to placement of V.M.W. in her home.

■ The issue of how many expert witnesses are required to testify in child custody—foster care placement proceedings under the Act is not properly before this court for two reasons. First, D.A.W. did not raise this issue at the superior court level. "A party may not raise for the first time on appeal an alleged error to which he failed to object to in the trial court." *Chugach Electric Assoc. v. Lewis*, 453 P.2d 345, 349 (Alaska 1969). *See also Ryfeul v. Ryfeul*, 650 P.2d 369, 374 & n. 16 (Alaska 1982) and cases cited therein. Second, D.A.W. did not include the issue in her Statement of Points on Appeal. Appellate Rule 210(e) provides in part that "[t]he appellate court will consider nothing but the points so stated."

■ Even if the issue were properly before this court, D.A.W.'s claim fails on its merits. D.A.W. argues that § 1912(e) of the Act expressly requires the testimony of more than one qualified expert witness because it uses the plural form, i.e., "expert witnesses." Section 1912(e) states in full:

No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified *expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(e) (1978) (Emphasis added).

Both the law and common sense dictate that the plural form of "expert witnesses" is not to be taken literally. Federal rules of construction provide that the plural and singular are interchangeable. According to 1 U.S.C. § 1 (1947),

In determining the meaning of any Act of Congress, unless the context indicates otherwise ... words importing the plural include the singular....[2]

The Department of the Interior *Guidelines, For State Courts; Indian Child Custody Proceedings*, 44 Fed.Reg. 67584 (1979), while not legally binding, indicate that only one expert witness is required in custody proceedings under the Act:

D.  4 Qualified Expert Witnesses

(a) Removal of an Indian Child from his or her family must be based on competent testimony from *one or more experts* qualified to speak specifically to the issue of whether continued custody by the parents or the Indian custodians is likely to result in serious physical or emotional damage to the child.

44 Fed.Reg. 67593 (1979) (Emphasis added).[3]

Neither the language nor the purpose of the Act requires that more than one qualified expert testify in child custody—foster care placement proceedings. This specification of error, if properly before the court, is lacking in merit.

---

2. Similarly, Alaska's rules of statutory construction state: "Words in the singular number include the plural, and words in the plural number include the singular." AS 01.10.050(b).

3. *See In the Matter of M.E.M.*, 635 P.2d 1313, 1318 (Mont.1981) (trial court should consider guidelines in deciding whether proper foundation existed for expert opinion).

The superior court found that placement of V.M.W. with D.A.W. was not in V.M.W.'s best interests, pursuant to AS 47.10.-082.[4] It ordered V.M.W. committed to the physical custody of DHSS pursuant to AS 47.10.080(c)(1),[5] as a child in need of aid, for a period not to exceed two years. The court's order also notified the natural mother that in order for it to change ·the disposition order prior to the time set for review D.A.W. would have to complete a residential alcohol abuse program and maintain sobriety. By virtue of this portion of its order the superior court in effect advised D.A.W. of what she would have to do to regain custody of V.M.W.

D.A.W. asserts that this portion of the superior court's order lacked statutory authorization and was therefore erroneous. She argues that the superior court placed an additional burden on her beyond the requirements of AS 47.10.080 and claims that while such recommendations are meant as incentives, they could have the opposite effect, presumably because if she failed to maintain sobriety even briefly, she would lose her opportunity to change the disposition.

■ The superior court's recommendations concerning the terms under which it would consider changing its disposition order were entirely appropriate. It is within the court's discretion in child custody proceedings to give clear guidance to a parent as to how custody of a child may be regained.

AFFIRMED.

4. AS 47.10.082 provides: "[I]n making its disposition order under 47.10.080(c) the court shall consider the best interests of the child...."

5. AS 47.10.080(c)(1) provides:
   *Judgments and Orders.*

   .    .    .    .    .

   (c) If the court finds that the minor is a child in need of aid, it shall
   (1) order the minor committed to the department for placement in an appropriate setting for a period of time not to exceed two years. or in any event past the date the minor becomes 19 years of age, except that the department may petition for and the court may grant in a hearing (A) two-year extensions of commitment which do not extend beyond the minor's 19th birthday if the extension is in the best interests of the minor and the public; and (B) an additional one-year period of supervision past age 19 if the continued supervision is in the best interests of the person and the person consents to it; the department may transfer the minor, in the minor's best interests, from one placement setting to another, and the minor, the minor's parents or guardian and the minor's attorney are entitled to reasonable notice of the transfer....