In the Matter of the TERMINATION OF the PARENTAL RIGHTS OF T.O.

No. S–2320.

Supreme Court of Alaska.

Aug. 26, 1988.

Jacqueline Bressers, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for T.O.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for State of Alaska.

Philip J. McCarthy, Jr., Asst. Public Advocate, Office of Public Advocacy, guardian ad litem for the minor children.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

---

OPINION

PER CURIAM.

## I. INTRODUCTION

This appeal is from a judgment of the superior court terminating the parental rights of T.O., the mother of two Native children. The State of Alaska (state) initiated the termination proceeding in accordance with the provisions of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963 (1982) and AS 47.10.0101 .080. T.O. raises three issues in this appeal: (1) that the state did not show by clear and convincing evidence that it engaged in active remedial efforts to preserve T.O.'s family, (2) that witnesses should not have been accepted as qualified experts because they did not demonstrate the high level of expertise suggested in guidelines to the federal statute, and (3) that the state was required, but failed, to produce any qualified expert witness who individually could testify to each element necessary to satisfy the federal statutory inquiry. We affirm, addressing in detail only the second and third issues.[1]

## II. THE REQUIREMENTS OF QUALIFIED EXPERT WITNESS TESTIMONY

■ We first address T.O.'s argument that the superior court accepted testimony from witnesses who should not have been considered qualified experts for the purpose of 25 U.S.C. § 1912(f).[2] She claims that for a witness to be a qualified expert for that purpose, the witness must have knowledge of Native culture in addition to the qualifications of an expert in the witness's field. The state replies that it has satisfied the statute regarding qualified expert witnesses by meeting advisory guidelines set forth in the Federal Register.[3] The state notes that the Guidelines contain the disclaimer that "they are not published as regulations because they are not intended to have binding legislative effect." 44 Fed.Reg. 67584.

In this case, seven witnesses were qualified as experts. Of these seven witnesses, four were qualified in social work, two were counselors, and one a neurologist. One of the social workers is a member of the relevant Native community and has Native children. One of the counselors, Helen Hickox, had approximately twenty years experience in teaching and counseling Native Alaskans.[4] T.O. raised an ob-

---

1. The superior court found that the state had made adequate efforts to provide remedial services to prevent a breakup of the family. As T.O. notes, this finding will be overturned if it is clearly erroneous, i.e., if we are left with a "definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding." In re S.D., Jr., 549 P.2d 1190, 1195 n. 10 (Alaska 1976); Civil Rule 52. Upon our review of the entire record, we conclude that the superior court's finding on this issue is not clearly erroneous.

2. 25 U.S.C. § 1912(f) (1982) states:
   No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

3. The Department of Interior issued Guidelines for State Courts, 44 Fed.Reg. 67583–95 (1979) (hereinafter Guidelines). Those applicable to 25 U.S.C. § 1912(f) state:
   Persons with the following characteristics are most likely to meet the requirements for a

qualified expert witness for purposes of Indian child custody proceedings:
   (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
   (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
   (iii) A professional person having substantial education in the area of his or her specialty.
   44 Fed.Reg. 67593.

4. Helen Hickox has a BA degree and a MA degree in counseling and teaching. She was a counselor at Mt. Edgecumbe High School in Sitka, Alaska from 1965–1970. In 1970 she became a counselor at the Alaska Skill Center at Seward. From 1974 to 1975 she was a teacher at Barrow Junior High School in Barrow, Alaska. She left that position to become the principle teacher and counselor at Gambell, St. Lawrence Island, Alaska, a position she held for five years. She then worked as a counselor for the

jection to the qualifications of only one of the witnesses offered as an expert. Her objection was overruled, and she did not object to the other six witnesses.

Based upon our review of the record, we conclude that the superior court did not abuse its discretion in accepting these witnesses as qualified experts under 25 U.S.C. § 1912(f).

■ Second, T.O. implicitly argues that the state may not aggregate the testimony of qualified expert witnesses, or qualified expert and lay witnesses, to satisfy the requirements of the federal statute. The state counters that there is no authority for the proposition that a qualified expert must individually possess knowledge of each element necessary to satisfy the statutory inquiry. An issue of first impression we thus address is whether one qualified expert witness must be able to answer the statutory inquiry necessary before an order authorizing a court to terminate parental rights may be entered, or whether the testimony of qualified expert witnesses may be aggregated to satisfy statutory requirements.

The Commentary to the Guidelines suggests that qualified expert testimony should answer a two-pronged question: (1) Will parental conduct cause serious physical or emotional harm to the child? and (2) Can the parent be persuaded to change such damaging conduct? [5]

Testimony from one qualified expert may supply the court with answers to the two-pronged question. A qualified expert witness may possess knowledge which enables the witness to address both the question of serious damage to the child as well as the ability of the parent to modify his or her

conduct. Indeed, we have previously held that only one witness need be presented to satisfy the qualified expert witness requirement in an ICWA termination proceeding. *D.A.W. v. State*, 699 P.2d 340, 342 (Alaska 1985). However, that holding does not support the argument that a qualified expert witness individually *must* possess such knowledge. Furthermore, there is no authority cited by T.O. to show that a qualified expert witness individually must have "substantially more reliable" judgment about both serious damage to the child and the ability of the parent to modify his or her conduct to comply with ICWA.

The Michigan Court of Appeals held that the testimony of qualified expert witnesses may be aggregated with testimony of lay witnesses in meeting the requirements of ICWA. *In re Kreft*, 148 Mich.App. 682, 384 N.W.2d 843 (1986). In *Kreft* only two of six witnesses were qualified expert witnesses under 25 U.S.C. § 1912(f): a psychologist and a mental health social worker, who was also a member of the mother's tribe. *Id.* 384 N.W.2d at 847. The court in *Kreft* relied on their testimony as well as the testimony of other witnesses, who were not qualified experts. *Id.* 384 N.W.2d at 847–48. It concluded that the testimony of qualified expert witnesses and lay witnesses could be aggregated to support termination of parental rights. *Id.*

Although T.O. relies on *Kreft* to support her argument, we believe her reliance is misplaced. Neither our decision in *D.A.W.* nor the decision of the Michigan Court of Appeals in *Kreft* persuades us that a qualified expert witness individually must possess knowledge necessary to provide testimony that will answer both prongs of the

court in Nome, Alaska, counseling young Native men with alcohol problems.

**5.** The Commentary to the Guidelines states:
The first subsection is intended to point out that the issue on which qualified expert testimony is required is the question of whether or not serious damage to the child is likely to occur if the child is not removed. Basically two questions are involved. First, is it likely that the conduct of the parents will result in serious physical or emotional harm to the

child? Second, if such conduct will likely cause such harm, can the parents be persuaded to modify their conduct?
The party presenting an expert witness must demonstrate that the witness is qualified by reason of educational background and prior experience to make judgments on those questions that are substantially more reliable than judgments that would be made by nonexperts. 44 Fed.Reg. 67593.

inquiry as interpreted in the Commentary to the Guidelines. Furthermore, neither the federal statute, the Guidelines nor the Commentary to the Guidelines provides any basis for imposing such a requirement. Thus, we conclude that no one individual qualified expert witness must possess all the knowledge necessary to answer both prongs of the question posed by the statute.

### III. CONCLUSION

The decision of the Superior Court is AFFIRMED.